# IN THE COURT OF APPEALS OF IOWA

———————————

No. 26-0380
Filed June 10, 2026

———————————

**In the Interest of J.M. and M.M., Minor Children,**

**B.M., Father,**
Appellant.

———————————

Appeal from the Iowa District Court for Floyd County,
The Honorable Elizabeth Batey, Judge.

———————————

**AFFIRMED**

———————————

Judith O'Donohoe of Elwood, O'Donohoe, Braun & White, LLP,
Charles City, attorney for appellant father.

William T. Morrison, Mason City, attorney for appellee mother.

Brenna Bird, Attorney General, Tamara Knight (until withdrawal), and
Michelle R. Becker, Assistant Attorneys General,
attorneys for appellee State.

Jamie L. Schroeder of Nelson & Toenjes PLLC, Shell Rock, attorney and
guardian ad litem for minor children.

———————————

Considered without oral argument
by Schumacher, P.J., and Ahlers and Badding, JJ.
Opinion by Ahlers, J.

**AHLERS, Judge.**

Divorced parents of four children came to the attention of the Iowa Department of Health and Human Services when the mother reported that one child was using guns at the father's home without supervision. A few weeks later—before the department could make a finding and offer services related to the firearm incident—the children were at the father's residence. The two oldest children grabbed the next younger child, held him down, pulled down his pants, and inserted a pencil into his anus. The father was in the next room within earshot when the attack occurred. When the department became aware of the attack, the youngest three children (all but the primary perpetrator of the attack) were removed from the father's home, placed temporarily in the mother's sole custody, and adjudicated children in need of assistance (CINA).

The entire family participated in services to work toward reunification. Although the father participated in many services, the juvenile court eventually entered a permanency order transferring sole custody of the youngest two children to the mother and rejecting the father's request for an additional six months to work toward reunification. The father appeals, contending the court erred by denying his request for an additional six months. The State argues the appeal should be dismissed as interlocutory, but if we reach the merits, we should affirm the juvenile court.

## I.      Standard of Review

CINA cases are reviewed de novo. *In re D.M.*, 965 N.W.2d 475, 479 (Iowa 2021). "In doing so, we give the juvenile court's factual findings weight, but we are not bound by them." *Id.* at 479–80. The primary concern is protecting the children's best interests. *Id.*

2

## II. Whether the Permanency Order Is a Final Order

Final orders are appealable as a matter of right, but interlocutory orders are appealable only with court permission. *In re T.R.*, 705 N.W.2d 6, 10 (Iowa 2005). An order is considered final when it "finally adjudicates the rights of the parties" and "disposes of all the issues." *Id.* (citations omitted). An order is interlocutory when the "trial court intends to do something further" or "directs an inquiry into a matter of fact preparatory to a final decision." *Id.* (citations omitted).

The State argues the juvenile court's permanency order was not final because it clearly contemplated further proceedings and the court retained jurisdiction over the parties. *See id.* (noting that an order is final when it "put[s] it beyond the power of the court which made it to place the parties in their original positions" (citation omitted)). In support of its claim, the State points out that the court could still order the department to pursue termination of the father's parental rights, the order requires the department to continue to provide services, and the order set dates for further hearings and review.

We are not persuaded by the State's arguments. Although the juvenile court kept the case open and set dates for further review, those actions did not negate the fact that the court had taken final action on the issue at hand. *See In re J.P.*, No. 02–0680, 2002 WL 31314752, at *1 (Iowa Ct. App. Oct. 16, 2002) (noting that an order is final if it disposes of the issue and further noting that the fact that an order could be modified at a subsequent hearing did not make the order interlocutory). The juvenile court did not direct further factual inquiry, nor did it suspend its decision on any of the issues presented pending further facts. *Compare id.* (noting that "[a]n order is interlocutory if it directs an inquiry into a matter of fact preparatory to a final

decision"), *with In re S.K.*, No. 10-1628, 2011 WL 662837, at *1–2 (Iowa Ct. App. Feb. 23, 2011) (finding the court's order was not final because it maintained the status quo while awaiting the results of the father's paternity test and his parenting assessment), *and In re Z.F.*, No. 14–1025, 2014 WL 7339455, at *1 (Iowa Ct. App. Dec. 24, 2014) (finding the court's order was not final when it noted the court would "reconsider approval of the Department of Human Services' plan upon receipt of reports or testimony regarding the fathers' mental health evaluations, ongoing therapy and efforts to improve parenting").

The juvenile court disposed of all the issues before it by transferring sole custody to the mother and determining that terminating the father's parental rights was not in the children's best interests. Because the court decided all issues before it, the permanency order was final and appealable as a matter of right. *See In re T.L.M.*, No. 04-1603, 2005 WL 292443, at *1 n.1 (Iowa Ct. App. Feb. 9, 2005) ("[S]ome orders entered after a permanency hearing may be final as the court has the option of returning the child home, continuing the current placement for six months, transferring custody to a suitable person, transferring sole custody to another parent, or providing for 'long-term' care." (citing Iowa Code § 232.104(2) (2003))).

## III.  Request for Additional Time to Work Toward Reunification

The father argues that the court erred in denying him an additional six months to work toward reunification. This argument is based on the statute that permits the juvenile court to continue a child's placement for an additional six months to allow a parent to work toward reunification if it can point to "specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the

4

child from the child's home will no longer exist at the end of the additional six-month period." *See* Iowa Code § 232.104(2)(b) (2024).

In support of his claim, the father alleges the department's failure to properly oversee the case prevented him from reaching his goals and achieving reunification. He argues an additional six months to work toward reunification would rectify those failures. But he identifies no specific facts, conditions, or expected behavioral changes to convince us that the need for removal will no longer exist at the end of the six-month period. *See id.*

The father's actions show that his inability to properly supervise the children remains and is likely to remain after six months. *See In re J.H.*, 952 N.W.2d 157, 171 (Iowa 2020) ("Rather than speculate about what the future holds for Dad, it is more accurate to look in the rear-view mirror and make a decision for [the children] based on what has already happened."(cleaned up)). The father's lack of supervisory capacity created a free-for-all environment in which the children abused each other. While under investigation for failing to adequately supervise his son when the child was using a gun, his lack of supervision led to one of the children being attacked as previously described. Although the father has reportedly participated in services to address his supervision issues and done well during supervised visits, he still fails to take accountability for his lack of supervision. Instead, he insinuates that the victim of the attack involving the pencil embellished the story; he argues over whether it was a sexual assault versus regular assault and whether the pencil actually penetrated his child; and he violates visitation rules.

Based on these facts, the juvenile court concluded the father has not accepted full responsibility for his part in creating such a hazardous environment. We agree. His minimization of the attack involving the pencil

5

and continued failure to properly supervise his children throughout this case shows that he does not fully comprehend or appreciate the danger that his lack of supervision creates for his younger children. *Cf. In re D.D.*, 955 N.W.2d 186, 193 (Iowa 2021) ("It's folly to think the [father] will stand sentinel to protect against a [danger] [he] doesn't acknowledge exists.").

The younger children's view of their father's inability to protect them exemplifies the problem. The victim of the attack involving the pencil did not report it to his father because he did not think his father would do anything about it. Even after extensive services and visits, the younger children still do not see their father as a safe parent. When asked how safe they feel under the father's care, they indicated they did not feel completely safe with the father and continued to reference their homemade "protection kits," which included a stick, a copper rod, pepper spray, and charging cords the kids intended to use as whips to protect themselves.

Based on the father's continued lack of accountability, his failure to appreciate the danger created by his inadequate supervision, his lack of compliance with visitation rules, and the younger children's lack of faith in the father's ability to protect them, we find no "specific factors, conditions, or expected behavioral changes" that would allow us to conclude the "need for removal . . . will no longer exist at the end of the additional six-month period." *See* Iowa Code § 232.104(2)(b). Therefore, the district court did not err in denying the father's request, and we affirm.

**AFFIRMED.**